UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-21742-CIV-ALTONAGA/Goodman

MT. HAWLEY INSURANCE
COMPANY,

      Plaintiff,
v.

L'EXCELLENCE CONDOMINIUM
ASSOCIATION, INC.; *et al.*,

      Defendants.
      _____/

## ORDER

**THIS CAUSE** is before the Court on Plaintiff, Mt. Hawley Insurance Company's Motion for Judgment on the Pleadings, Renewed Motion for Final Default Judgment, and Incorporated Memorandum of Law [ECF No. 64]. Defendants, L'Excellence Condominium Association, Inc. ("L'Excellence") and Jorge Coria (collectively, the "Defendants"), filed Notice[s] as to Plaintiff's Motion [ECF Nos. 70, 71], advising the Court they do not intend to file responses in opposition to the Motion. The Court has carefully considered the Motion, the record, and applicable law. For the following reasons, the Motion is granted.

### I.    BACKGROUND

This is an insurance coverage dispute. (*See generally* Am. Compl. [ECF No. 40]). Plaintiff seeks a declaratory judgment that it has no duty to defend or indemnify L'Excellence, Castle Management, Inc., and Castle Management, LLC[1] against a state lawsuit filed by Mr. Coria (the "Underlying Action"). (*See generally id.*).

---

[1] Clerk's Defaults [ECF Nos. 55, 59] were entered against Castle Management, Inc., and Castle Management, LLC (the "Castle Defendants") after both failed to respond to the Amended Complaint, despite having been served.

The Underlying Action arises from Mr. Coria's fall from scaffolding while working at a residential condominium site, resulting in catastrophic injuries. (*See generally id.*, Ex. 1, State Ct. Compl. [ECF No. 40-1]). In his state-court complaint, Mr. Coria alleges the injuries occurred while working in the course and scope of his employment with GC Construction and Consulting Services, LLC ("GC Construction"). (*See id.* ¶ 12). GC Construction was performing work at a residential condominium owned and/or operated by L'Excellence. (*See id.* ¶ 13). Mr. Coria asserts negligence claims against L'Excellence and the Castle Defendants. (*See id.* ¶¶ 109–44). Plaintiff has been defending L'Excellence and the Castle Defendants under a reservation of rights. (*See* Am. Compl. ¶¶ 62, 66).

Plaintiff insures L'Excellence through a commercial general liability policy (the "Policy"). (*See generally id.*, Ex. 3, Policy [ECF No. 40-3]). The Policy provides duty-to-defend and indemnification coverage for any "bodily injury" caused by an "occurrence" in the "coverage territory" during the "policy period," subject to certain exceptions and conditions for coverage. (Am. Compl. ¶ 43 (quoting Policy 4; internal quotation marks omitted)).[2] The Policy includes a "Tenants and Contractors – Conditions of Coverage" Endorsement ("Tenants and Contractors Endorsement"). (*Id.* (quoting Policy 33; block letters and bold omitted)).

The Tenants and Contractors Endorsement provides, in part:

**TENANTS AND CONTRACTORS – CONDITIONS OF COVERAGE**

We shall have no obligation to defend or indemnify any insured for any "bodily injury," "property damage," and/or "personal and advertising injury" arising directly or indirectly from a commercial tenant's occupation, use or maintenance of any premises leased to such tenant by any insured, such tenant's operations of

---

[2] The Court uses the pagination generated by the electronic CM/ECF database, which appears in the headers of all court filings.

any kind, or work by a "contractor" unless each and every of the following conditions is satisfied:

. . .

**6.** Written agreements are obtained from each and every "contractor" which hold harmless and indemnify the insured(s) against whom the claim is made for all injuries, damages, claims, and suits arising directly or indirectly from the "contractor's" work (including any work performed by the "contractor's" subcontractors or sub-subcontractors). Such agreements must expressly provide indemnification to the fullest extent permitted by law. Such agreements must be signed by the parties prior to the date of the "occurrence" or offense.

**7.** The written agreements required in condition 6 must also require that the "contractor" will obtain additional insured coverage under the "contractor's" primary commercial general liability policy for each insured(s) against whom the claim is made. Such agreements must be signed by the parties to the agreement prior to the date of the "occurrence" or offense. Such agreements must require limits of additional insured coverage equal to or greater than the limits of this policy. Such agreements must state that the additional insured coverage is to be primary and noncontributory.

**8.** The "contractor's" primary commercial general liability insurer agrees to defend and indemnify every insured against whom the claim is made for the "bodily injury," "property damage," and/or "personal and advertising injury," and does so on a primary basis under a policy with limits equal to or greater than the limits of this policy.

(Policy 33 (alteration added; block letters and bold in original)). It also defines a "[c]ontractor" as "any person or entity that any insured hires or contracts with for the performance of any work for construction, renovations, maintenance[,] . . . or repairs, regardless of where such work is performed, and regardless of whether such person or entity is described as a contractor, construction manager, general contractor, subcontractor, . . . or by any other term." (*Id.* (alterations added)).

Plaintiff filed its single-count Amended Complaint seeking a declaration it has no duty to defend or indemnify L'Excellence and the Castle Defendants for claims brought by Mr. Coria.

3

(*See generally* Am. Compl.). According to Plaintiff, Mr. Coria's injuries arose directly or indirectly from his work for a contractor, and thus L'Excellence, the named insured, was required to comply with the necessary conditions precedent for coverage. (*See id.* ¶¶ 74–77, 82–83). Plaintiff explains L'Excellence failed to satisfy the conditions precedent for coverage under the Policy's Tenants and Contractors Endorsement — specifically, conditions 6, 7, and 8 quoted above. (*See id.* ¶¶ 78–85).

Plaintiff moves for judgment on the pleadings stating (1) it has no duty to defend or indemnify L'Excellence and the Castle Defendants for claims brought by Mr. Coria in the Underlying Action; and (2) it is entitled to recoup from L'Excellence and the Castle Defendants the defense costs it has incurred in the Underlying Action. (*See generally* Mot.). As stated, Defendants do not oppose the Motion.[3] (*See* Mr. Coria Notice; L'Excellence Notice). Although Defendants' failure to file an opposition may be sufficient ground to grant Plaintiff's Motion by default,[4] the Court evaluates the Motion on the merits.

---

[3] On February 5, 2020, L'Excellence and Mr. Coria filed Notices advising they do not intend to oppose Plaintiff's Motion. (*See* Mr. Coria Notice; L'Excellence Notice). Despite Defendants' intention not to respond, the parties filed a Joint Motion for Extension of Time to File Joint Pre-trial Stipulation and Proposed Findings of Fact and Conclusions of Law [ECF No. 72], explaining the parties "have made substantial progress toward narrowing disputed factual and legal issues." (*Id.* 1). On February 12, 2020, the Court entered an Order [ECF No. 73] setting a status conference "[t]o assist the Court in its consideration of [Plaintiff's] seemingly unopposed Motion" because "[i]t appeared Defendants [were] taking contradictory positions." (*Id.* (alterations added)). On the same day, Defendants again informed the Court of their intent not to respond to Plaintiff's Motion and requested the Court cancel the status conference. (*See* Joint Mot. . . . to Dispense with Status Conference [ECF No. 74] 2). The undersigned did so. (*See* Feb. 13, 2020 Order [ECF No. 75]).

[4] "There is some unpublished federal authority suggesting that if a party fails to respond to a motion for entry of judgment on the pleadings, the court may grant the motion by default." *QBE Ins. Corp. v. Aza*r, No. CV-12-S-00844, 2013 WL 2350338, at *1 (N.D. Ala. May 24, 2013) (citations omitted); *see also Ortez v. S. Asset Recovery, Inc.*, No. 1:12-cv-04296, 2013 WL 12382888, at *1 n.1 (N.D. Ga. May 24, 2013), *report and recommendation adopted*, 2013 WL 12382886 (N.D. Ga. June 27, 2013) ("When a party fails

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed — but early enough not to delay trial — a party may move for judgment on the pleadings." *Id.* (alteration added). "Judgment on the pleadings is proper when no issues of material fact exist, and the moving party is entitled to judgment as a matter of law based on the substance of the pleadings and any judicially noticed facts." *Interline Brands, Inc. v. Chartis Specialty Ins. Co.*, 749 F.3d 962, 965 (11th Cir. 2014) (quoting *Cunningham v. Dist. Attorney's Office for Escambia Cty.*, 592 F.3d 1237, 1255 (11th Cir. 2010); internal quotation marks omitted). In ruling on the motion, "[a]ll facts alleged in the complaint must be accepted as true and viewed in the light most favorable to the nonmoving party." *Scott v. Taylor*, 405 F.3d 1251, 1253 (11th Cir. 2005) (alteration added; citing *Cannon v. City of West Palm Beach*, 250 F.3d 1299, 1301 (11th Cir. 2001)).

## III. DISCUSSION

Plaintiff contends it is not obligated to defend or indemnify L'Excellence or the Castle Defendants because L'Excellence did not satisfy the necessary conditions precedent for coverage to apply. (*See* Mot. 5–8, 11–17). According to Plaintiff, "[w]hen any one of the several applicable conditions precedent in the 'Tenants and Contractors – Conditions of Coverage' endorsement are not satisfied, [Plaintiff] is relieved of its obligation to defend its insureds from a lawsuit to which

---

to respond to a motion to dismiss or for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(b) and 12(c), granting the motion based solely on the party's failure to respond is within the discretion of a district judge." (citing *Magluta v. Samples*, 162 F.3d 662, 664–65 (11th Cir. 1998)). Further, on February 5, 2020, the Court entered an Order [ECF No. 69] requiring Defendants to respond to Plaintiff's Motion and cautioned Defendants the "[f]ailure to do so may be deemed sufficient cause for granting the motion by default." (*Id.* (quoting S.D. Fla. L.R. 7.1(c); (alteration added)).

the endorsement applies." (*Id.* 17 (alterations added)). Given the foregoing, Plaintiff insists it is entitled to judgment on the pleadings.

Under Florida law,[5] an insurer's duty to defend "depends solely on the facts and legal theories alleged in the pleadings and claims against the insured." *Stephens v. Mid-Continent Cas. Co.*, 749 F.3d 1318, 1323 (11th Cir. 2014) (quoting *James River Ins. Co. v. Ground Down Eng'g Inc.*, 540 F.3d 1270, 1275 (11th Cir. 2008); internal quotation marks and emphasis omitted). "The duty to defend arises when the relevant pleadings allege facts that fairly and potentially bring the suit within policy coverage." *Id.* (internal quotation marks and citation omitted).

A determination regarding the duty to defend, therefore, requires the Court "examin[e] the allegations in the complaint filed against the insured." *Lime Tree Vill. Cmty. Club Ass'n Inc. v. State Farm Gen. Ins. Co.*, 980 F.2d 1402, 1405 (11th Cir. 1993) (alteration added; citation omitted). Importantly, the analysis "turns on the 'grounds for liability' expressed by 'allegations of fact' in the underlying complaint[]." *Id.* (alteration added; citation omitted). "[I]n special circumstances, a court may consider extrinsic facts if those facts are undisputed, and, had they been pled in the complaint, they clearly would have placed the claims outside the scope of coverage." *Stephens*, 749 F.3d at 1323 (alteration added; citations omitted). The Eleventh Circuit has noted, however, "such cases are best viewed as exceptional cases in which courts have crafted an equitable remedy when it is manifestly obvious to all involved that the actual facts placed the claims outside the scope of coverage." *Id.* (internal quotation marks and citation omitted).

---

[5] The parties do not dispute the Policy is governed by Florida law. (*See* Mot. 9).

The Policy's Tenants and Contractors Endorsement states Plaintiff has "no obligation to defend or indemnify any insured for any 'bodily injury' . . . arising directly or indirectly from . . . work by a 'contractor'" unless "each and every . . . condition[]" delineated in the endorsement is "satisfied." (Policy 33 (alterations added)). In other words, the Tenants and Contractors Endorsement excuses Plaintiff from defending the Underlying Action if (1) Mr. Coria's injuries arose either directly or indirectly from a contractor's work; and (2) L'Excellence failed to comply with each and every condition set forth in the endorsement.

As to the first inquiry — whether Mr. Coria's injuries arose either directly or indirectly from a contractor's work — Mr. Coria admits his injuries stem from GC Construction's work at a condominium owned and/or operated by L'Excellence. (*See* State Ct. Compl. ¶¶ 12–13). The Court turns to whether GC Construction qualifies as a contractor under the Policy. As defined earlier, a "[c]ontractor" is "any person or entity that any insured hires or contracts with for the performance of any work for construction, renovations, maintenance[,] . . . or repairs, regardless of where such work is performed, and regardless of whether such person or entity is described as a contractor, construction manager, general contractor, subcontractor, . . . or by any other term." (Policy 33 (alterations added)).

Plaintiff contends GC Construction entered into an agreement with L'Excellence to perform "construction, renovations, maintenance, or repairs at a residential condominium owned and/or operated by L'Excellence." (Am. Compl. ¶ 14; *see also id.* ¶ 74). Mr. Coria concedes this is true (*see* Mr. Coria Answer & Affirmative Defenses [ECF No. 47] ¶¶ 14, 74); while L'Excellence denies the allegations in paragraphs 14 and 74 as phrased (*see* L'Excellence Answer & Affirmative Defenses [ECF No. 48] ¶¶ 14, 74). Plaintiff points to the Agreement (*see* Am.

7

Compl., Ex. 2, Agreement [ECF No. 40-2])[6] between GC Construction and L'Excellence. (*See* Mot. 5). Under the terms of the Agreement, GC Construction was required to perform "re-roofing of the building and related work at L'Excellence" (*see* Agreement 1), and provide "all . . . labor . . . necessary to complete the work" (*id.* 2 (alterations added)). L'Excellence admits this is true (*see* L'Excellence Answer ¶ 15), while Mr. Coria does not contest the scope of GC Construction's work (*see* Mr. Coria Answer ¶¶ 14–15). Defendants do not rebut Plaintiff's contention, nor do they offer any facts suggesting GC Construction was hired for any purpose other than to perform construction, renovations, repairs, or maintenance.

In short, the parties do not dispute L'Excellence hired GC Construction to perform construction, renovations, repairs, or maintenance at its residential condominium. It is thus clear GC Construction qualifies as a contractor under L'Excellence's Policy, especially given the Policy's broad definition of a contractor. *See Mt. Hawley Ins. Co. v. Porta Bella Yacht & Tennis Club Condo. Ass'n*, No. 9:17-cv-80277, 2018 WL 783101, at *4 (S.D. Fla. Feb. 8, 2018) (finding two companies qualified as contractors under policy of insurance where the undisputed facts

---

[6] Given Plaintiff's claim relies on factual issues not normally alleged in a complaint, and the uncontroverted facts in this case, evidenced by Defendants' refusal to provide a competing version, the Court finds "this is the type of 'exceptional' case in which equity demands consideration of extrinsic facts" — namely, facts illuminated by the Amended Complaint's exhibits. *Jones Boat Yard, Inc. v. St. Paul Fire & Marine Ins. Co.*, No. 16-cv-25344, 2017 WL 5640628, at *10 (S.D. Fla. Sept. 6, 2017), *aff'd*, 745 F. App'x 308 (11th Cir. 2018); *see also Composite Structures, Inc. v. Cont'l Ins. Co.*, 560 F. App'x 861, 866 (11th Cir. 2014) (considering the uncontroverted date of the insured's written notice to the insurer when determining the insurer's duty to defend because "the date of written notice to the insurance company is not a fact that would normally be alleged in the complaint" (citation omitted)); *Higgins v. State Farm Fire & Cas. Co.*, 894 So. 2d 5, 10 n.2 (Fla. 2004) (recognizing exception to the general rule applies "where an insurer's claim that there is no duty to defend is based on factual issues that would not normally be alleged in the underlying complaint").

established the companies were hired to perform construction, renovations, repairs, or maintenance).

The Court turns to the second inquiry — whether L'Excellence complied with the necessary conditions precedent for coverage. Plaintiff contends it owes no duty to defend or indemnify L'Excellence because L'Excellence did not fulfill the conditions precedent to trigger coverage under the Policy. (*See* Mot. 5–8, 11–17). The Court agrees with Plaintiff. As explained, the Tenants and Contractors Endorsement expressly states Plaintiff has "no obligation to defend or indemnify any insured for any 'bodily injury'" unless L'Excellence "satisfie[s]" "each and every . . . condition[]" set forth in the endorsement. (Policy 33 (alterations added)).

Plaintiff states it is undisputed L'Excellence did not secure a written agreement from GC Construction that GC Construction would "indemnify both L'Excellence and [the Castle Defendants] as required by Condition 6." (Mot. 12 (alteration added)). Condition 6 requires L'Excellence to secure "[w]ritten agreements . . . from each and every 'contractor' which hold harmless and indemnify the insured(s) . . . to the fullest extent permitted by law." (Policy 33 (alterations added)). Plaintiff states the Agreement requires GC Construction to indemnify only the named insured, L'Excellence, and not the omnibus insureds,[7] the Castle Defendants. (*See* Mot. 5).

The Policy reflects the named insured is L'Excellence (*see* Policy 2), and further identifies "any organization [] acting as [L'Excellence's] real estate manager" as an insured (*id.* 13

---

[7] "An 'omnibus insured' is one who is covered by a provision in the policy but not specifically named or designated. Additionally, the rights of an 'omnibus insured' flow directly from his or her status under a clause of the insurance policy without regard to the issue of liability." *Cont'l Cas. Co. v. Ryan Inc. E.*, 974 So. 2d 368, 374 (Fla. 2008) (internal quotation marks and citations omitted).

9

(alterations added)). The parties do not dispute the Castle Defendants served as the property manager for L'Excellence. (*See* Am. Compl. ¶ 17; L'Excellence Answer ¶ 17).[8] As such, condition 6 required L'Excellence to secure a "[w]ritten agreement[] . . . from [GC Construction] which . . . indemnif[ies]" the Castle Defendants (Policy 33 (alterations added)); it failed to do so. Indeed, by the terms of the Agreement, GC Construction agreed to indemnify only "[L'Excellence], its officers, directors, agents and employees and [L'Excellence]'s Representative," and not the Castle Defendants. (*See* Agreement 5 (alterations added)). For this reason, L'Excellence did not comply with condition 6 of the Tenants and Contractors Endorsement.

Plaintiff next asserts L'Excellence failed to secure a written agreement from GC Construction requiring GC Construction "to name both L'Excellence and [the Castle Defendants] on its liability policies as Additional Insureds on a primary and noncontributory basis as required by Condition 7." (Mot. 12 (alteration added)). Condition 7 requires L'Excellence to secure a "written agreement[] . . . that the 'contractor' will obtain additional insured coverage under the 'contractor's' primary commercial general liability policy for each insured(s)" and "[s]uch agreements must state that the additional insured coverage is to be primary and noncontributory." (Policy 33 (alterations added)). Again, L'Excellence failed to do so. The Agreement identifies "[L'Excellence] . . . as an additional insured," but not the Castle Defendants (Agreement 7 (alterations added)); and it does not state — as it must — "the additional insured coverage is . . .

---

[8] Mr. Coria states he is "[w]ithout knowledge" and thus "denie[s]" this allegation. (Mr. Coria Answer ¶ 17 (alterations added)). While Mr. Coria purports to deny this allegation, Mr. Coria does so without reference to any facts or legal authority to support his conclusory denial.

primary and noncontributory" (Policy 33 (alteration added)).  L'Excellence thus did not fulfill condition 7 of the Tenants and Contractors Endorsement.

Plaintiff further contends GC Construction's "liability insurer denied coverage instead of defending both L'Excellence and [the Castle Defendants], as required by Condition 8."  (Mot. 12). Condition 8 requires that GC Construction's "primary commercial general liability insurer agree[] to defend and indemnify every insured against whom the claim is made for [] 'bodily injury.'" (Policy 33 (alterations added)).  L'Excellence concedes no other liability insured, save for Plaintiff, has agreed to defend L'Excellence in the Underlying Action.[9]  (*See* Am. Compl. ¶ 61; L'Excellence Answer ¶ 61).

Plaintiff also points to a Coverage Disclaimer Letter sent on behalf of GC Construction's commercial liability insurer which states GC Construction "does not have coverage for [Mr. Coria's] loss" and advises L'Excellence that GC Construction's commercial liability insurer "will not participate in the defense or indemnity of [L'Excellence]."  (Am. Compl., Ex. 5, Coverage Disclaimer Letter [ECF No. 40-5] 2 (alterations added); *see also* Am. Compl. ¶¶ 54–56). L'Excellence concedes this is true.  (*See* L'Excellence Answer ¶¶ 54–56).  It is thus clear L'Excellence did not satisfy condition 8 of the Tenants and Contractors Endorsement.

In short, L'Excellence failed to comply with at least three conditions of the Tenants and Contractors Endorsement.  Defendants offer no facts or legal analysis whatsoever to refute Plaintiff's position.  Accordingly, "[p]ursuant to the clear and unambiguous language of

---

[9] Mr. Coria states he is "[w]ithout knowledge" and thus "denie[s]" the allegations. (Mr. Coria Answer ¶ 61 (alterations added)).  Nevertheless, Mr. Coria concedes Plaintiff is the only liability insurer participating in the defense of L'Excellence.  (*See* Am. Compl. ¶ 60; Mr. Coria Answer ¶ 60).

Case 1:19-cv-21742-CMA   Document 76   Entered on FLSD Docket 02/21/2020   Page 12 of 13

CASE NO. 19-21742-CIV-ALTONAGA/Goodman

[L'Excellence's] insurance policy, . . . Plaintiff owes no duty of coverage to" L'Excellence or the Castle Defendants. *Porta Bella Yacht & Tennis Club Condo. Ass'n*, 2018 WL 783101, at *5 (alterations added); *see also id.* (analyzing the same endorsement and finding insurer had no duty to defend where the insured failed to comply with necessary conditions precedent for coverage); *see also Composite Structures, Inc.*, 560 F. App'x at 866 (finding insurer had no duty to defend where the insured failed to comply with three conditions of the policy's pollution exclusion); *Mt. Hawley Ins. Co. v. Nat'l Builders LLC*, No. 08 Civ 5526, 2009 WL 1919611, at *3 (S.D.N.Y. June 30, 2009) (granting summary judgment in favor of the insurer where the insured failed to comply with three conditions to coverage "[b]ecause each . . . requirement[] is an express condition precedent to coverage under the policy" and thus "any one of [the insured's] failures is a sufficient basis for [the insurer] to disclaim coverage" (alterations added)).

Defendants do not oppose Plaintiff's request for reimbursement of the costs and fees incurred in defending L'Excellence and the Castle Defendants under a reservation of rights. Accordingly, Plaintiff's claim for reimbursement of defense costs is granted. The Court retains jurisdiction with respect to the amount of reimbursement.

## IV.   CONCLUSION

For the foregoing reasons, it is

**ORDERED AND ADJUDGED** that Plaintiff, Mt. Hawley Insurance Company's Motion for Judgment on the Pleadings [and] Renewed Motion for Final Default Judgment **[ECF No. 64]** is **GRANTED**. Final judgments will issue by separate order. The Clerk of Court is directed to **CLOSE** the case.

CASE NO. 19-21742-CIV-ALTONAGA/Goodman

**DONE AND ORDERED** in Miami, Florida, this 21st day of February, 2020.

_____
**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc:   counsel of record